IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JOE WEST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:08-CV-570-WKW [WO] |
| | ) |
| MANDO AMERICA CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the court are two motions filed by Defendant Mando America Corporation ("Mando"). In both motions, Mando is requesting that the court issue an order compelling Plaintiff Joe West ("West") to cease and desist running advertisements soliciting opt-ins. (Docs. # 12 & 15.) West filed a timely response and in addition, requested court review of Mando's actions under Rule 11 of the Federal Rules of Civil Procedure. (Doc. # 16.) For the following reasons, Mando's motions for a cease and desist order (Docs. # 12 & 15) are due to be denied, and West's response (Doc. # 16), to the extent it requests Rule 11 review, is due to be denied as well.

**I.  FACTS AND PROCEDURAL HISTORY**

On July 17, 2008, West filed a complaint against Mando requesting damages and injunctive relief for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA") for allegedly failing to pay West for overtime labor. (Doc. # 1.) West brought the suit as an opt-in collective action under § 216(b) with the potential class of Mando's hourly

employees working during the three years prior to filing the Complaint. (Doc. # 1 ¶¶ 39-40.) On September 16, 2008, Mando filed a motion requesting the court to compel West to cease and desist running advertisements soliciting opt-ins, to disqualify counsel from representing any solicited opt-ins, and for other relief. (Doc. # 12.) Mando's motion pertained specifically to a newspaper advertisement West arranged to be published in the *Opelika News* entitled "Notice of Lawsuit Against Mando America Corporation." (Doc. # 12, at 2.) In response to the motion, the court ordered West to show cause why the motion should not be granted. (Doc. # 13.) Before West's response, Mando filed another motion requesting again that the court order West to cease and desist from running advertisements he continued to publish while the first motion was pending. (Doc. # 15.) West then filed a timely response and in addition, requested court review of Mando's motion under Rule 11 of the Federal Rules of Civil Procedure. (Doc. # 16, at 2, 18.) Mando also filed a reply brief (Doc. # 18).

## II. DISCUSSION

*West's Pre-Certification Contacts with Potential Plaintiffs*

The FLSA's collective action provision, § 216, authorizes a plaintiff seeking relief for unpaid overtime compensation to bring a collective action on behalf of himself and similarly situated employees who give written consent. § 216(b). FLSA collective actions differ from class-action lawsuits under Rule 23 of the Federal Rules of Civil Procedure: "There is a fundamental, irreconcilable difference [between the two actions]" because under Rule 23, each person within the class description must opt out to avoid being bound by a

judgment for the class members, whereas under the FLSA, plaintiffs must affirmatively opt in to become class members. *Lacahapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).[1] The notice requirements are appropriately different as well. Most notably, § 216 "gives little guidance to the . . . appropriate procedure for gathering written consents," so this district has held that "§ 216 does *not* require parties to obtain judicial approval before seeking to locate other 'similarly situated' persons." *Garner v. G.D. Searle Pharm.*, 802 F. Supp. 418, 421 (M.D. Ala. 1991) (Thompson, J.) (emphasis added); *see also White v. Osmose*, No. 01-A-977-N, slip. op. at 4-5 (M.D. Ala. issued Oct. 18, 2001) (Albritton, J.) (stating "[i]t was not the court's intention to imply at the scheduling conference that [plaintiff] needed to make an evidentiary showing before he had a right to contact potential members of a plaintiff class," and rejecting the argument that plaintiff's counsel improperly issued class notice in an FLSA collective case because, though it occurred prior to class certification, the communication did not claim to be a judicially authorized notice). Thus, as this district has already clearly stated: "Although the court would, of course, consider challenges to the validity of any consents filed, it is not the court's role to prohibit plaintiffs from attempting to gather their consents."[2] *Garner*, 802 F. Supp. at 421.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit prior to October 1, 1981.

[2] Indeed, the burden of proof is on plaintiffs should they later request judicially *authorized* notices, to demonstrate "a reasonable basis for crediting the assertion that aggrieved individuals exist in the class [plaintiffs] propose[]." *Horne v. U.S. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1234 (M.D. Ala. 2003) (Albritton, C.J.).

3

Though plaintiffs are not required to obtain judicial approval for soliciting opt-ins for FLSA collective actions, courts may become involved in the notice process when plaintiffs seek their involvement. *Garner*, 802 F. Supp. at 421. Once plaintiffs *request* judicial authorization of a notice, "the Eleventh Circuit has held that a district court must make certain determinations" before permitting that authorization. *Barron v. Henry County School Sys.*, 242 F. Supp. 2d 1096, 1101 (M.D. Ala. 2003) (Albritton, C.J.). At that point, the court's supervisory role is triggered.

Courts also may become involved in the notice process, however, by exercising their power to restrain plaintiffs' notice until conditional class certification or approval of their notices by prohibiting plaintiffs from including "unqualified, misleading statements" in communications with potential plaintiffs, *Taylor v. CompUSA, Inc.*, No. 1:04CV718-WBH, 2004 WL 1660939, at *3 (M.D. Fla. June 29, 2004). *See also Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1343, 1344 (N.D. Ga. 2007) (noting that "[l]ittle guidance from the Eleventh Circuit exists on the issue of pre-certification solicitations," but referencing *Taylor* and noting the court's discretion to prohibit pre-certification statements that are "factually inaccurate, unbalanced, or misleading"). In *Taylor*, a district court decision from this circuit addressing the § 216(b) notice, the court noted that "[p]laintiffs contend[ed], correctly, that they are not required to rely on court-facilitated notice to notify potential opt-in plaintiffs of the action." 2004 WL 1660939, at *3. And even though the court ordered plaintiffs not to include "unqualified, misleading statements in communication

with potential plaintiffs," the court found sanctions for messages with potentially misleading factual and legal conclusions to potential plaintiffs "unwarranted," precisely because the court had not yet "prescribed a particular form of notice or placed restrictions on [the] [p]laintiffs' contact with potential class members." *Id*.

Similarly, the court in this action has not prescribed a type of notice or placed restrictions on West's contact with potential members. Until that point, or until he requests authorization to send judicial notice, West is permitted to contact opt-in candidates with communications that are not misleading. Mando complains that West's advertisement is misleading because it is titled "Notice" rather than "Advertisement."[3] (Doc. # 12, at 10 n.8.) In addition, Mando argues that the advertisement is misleading because it promises to represent solicited opt-ins at no cost if plaintiffs recover any proceeds from the lawsuit. (Doc. # 12, at 10 n.8.) West's advertisement, however, is not misleading in comparison to, for example, the misleading comments in *Taylor*. There, the advertisement told potential plaintiffs they were "entitled" to join the lawsuit, that the defendant was obligated to pay all overtime to the described class, that any one fitting under that description was "entitled" to be paid, and that the defendant intentionally implemented a policy encouraging uncompensated work. *Taylor,* 2004 WL 1660939, at *4 n.7. The statements on the website in *Maddox* had similar flaws. The court required plaintiffs to add "the lawsuit alleges that"

---

[3] The first motion appended a copy of the advertisement from West with "Notice" at the top, but Mando's related second and third filings appended copies of the advertisement without the "Notice" title. (*Compare* Doc. # 12, Attach. A, *with* Doc. # 15, *and* Doc. # 18.)

to a statement of fact and that the defendant denies the allegation, to change the statement that certain readers were "entitled" to seek payment or "eligible" to participate to be rephrased that they *may* be entitled or eligible. *Maddox*, 499 F. Supp. 2d at 1344-45. The court also requested the plaintiffs change the language stating that readers must be represented by that plaintiffs' counsel to be eligible to assert a claim in the case, and the language that plaintiffs' counsel will assist any members subject to "retaliation" by the defendant. *Id.* at 1346.

West's advertisements do not fall into those traps. West states as a matter of fact the existence of an "ongoing lawsuit" and states as "claims," not facts, the allegation of unlawful deductions from compensation; the advertisement tells readers in a certain class that they *may* have a claim. (Doc. # 12, Attach. A; Doc. # 15, at 5.) The promise of no-cost representation is clearly qualified by plaintiffs' recovery and the reader's being a class member. (Doc. # 12, Attach. A; Doc. # 15, at 5.) The advertisement is not misleading, and the court will not require changes to the language in its current state.

*West's Advertisement under the Alabama Rules of Professional Conduct*

West's advertisements do not run afoul of the Alabama Rules of Professional Conduct.[4] Mando simply has misinterpreted those applicable Rules. Rule 7.2 governs lawyer's advertisements: "A lawyer who advertises legal services . . . (A) [s]ubject to the requirements of Rule 7.1 . . . may advertise services through public media, such as a . . .

---

[4] Lawyers practicing before this court must adhere to the Alabama Rules of Professional Conduct. Local Rule 83.1(f).

neswpaper . . . ." The Rule gives other examples of public media, including "written communication not involving solicitation as defined in Rule 7.3," but that type of media is *separate from* a newspaper advertisement. In other words, contrary to Mando's claim (*see* Doc. # 12, at 9), Rule 7.3 on soliciting professional employment does *not* apply to newspapers, which makes sense given that Rule 7.3 governs *direct* contact with prospective clients and concerns the more coercive context of direct communication. The newspaper advertisement must comply only with Rule 7.1, which prohibits a lawyer from making "false or misleading communication about the lawyer or the lawyer's services." The court finds that West's advertisement does not "[c]ontain[] a material misrepresentation of fact or law, or omit[] a fact necessary to make the statement considered as a whole not materially misleading," Rule 7.1(a), and is not "likely to create an unjustified expectation about results the lawyer can achieve," Rule 7.1(b), for the reasons stated above with respect to whether the notice contains misleading statements to potential plaintiffs.

*Conduct Alleged to Fall under Rule 11 of the Federal Rules of Civil Procedure*

West's response to Mando's motions for a cease and desist order accuses Mando's counsel of holding pre-certification meetings with current Mando employees who are putative class members, allegedly "in order to obtain declarations to use against these individuals should they join [the] action, while misrepresenting the purpose of his visit as a 'survey.'" (Doc. # 16, at 2.) West submitted a declaration from a recently-fired Mando employee, Mr. Calvin Cobb, who claimed that while working for Mando and after the suit

7

was filed, a lawyer for Mando told him that the lawyer was conducting a survey about pay and the treatment of employees and requested Mr. Cobb sign a document attesting that he had no complaints about pay; Mr. Cobb refused to sign the document, and after a discussion with the attorney, signed it with a fake name, but was fired a few days later for an ostensibly unrelated reason.  (Doc. # 16 Ex. B.)  Mando maintains its right to communicate with its employees, and points out that the employees were not represented at the time of the interviews.  (Doc. # 18, at 10-15.)

Regardless of whether West has grounds for complaint, he only has alluded to Rule 11.  There is no proper motion before the court for considering Rule 11 sanctions.  Furthermore, West's request that the court consider Rule 11 pertains to Mando's "motive" for filing the cease and desist motions, and not directly to the "survey" meetings.  (Doc. # 16, at 2.)  Apparently, West's accusations about the "survey" meetings serve only to support West's argument that Mando's cease and desist requests are "audacious" (Doc. # 16, at 14) because West himself is improperly communicating with the putative class (Doc. # 16, 11-14).

The court declines to entertain Rule 11 sanctions on this basis.  West has drawn no connection between Rule 11's specific considerations and the conduct in question.  Even though Mando's cease and desist motions ultimately failed, Mando's motions had valid legal arguments in support of its contention, and as this court declined to immediately halt the advertisements, Mando's interest warranted filing multiple motions as the advertisements

continued. *See* Rule 11(b)(1)-(2) (detailing relevant conditions to which an attorney certifying a motion before the court must attest). Furthermore, the court declines to find Mando's purpose was improper, even if, according to West, Mando's actions are hypocritical (Doc. # 16, at 11). *See* Rule 11(b)(1). A plaintiff's advertising communications to putative class members implicate different concerns than those underlying a company-defendant's contacts with its employees.

The question of whether Mando's communications with employees is sanctionable, however, is another matter altogether. West has not requested the appropriate relief for mitigating or halting Mando's conduct – West has not requested a protective order, relief granted on ethical violations, or authorization to notice Mando employees of the action or of false allegations Mando purportedly already has communicated. Thus, at this point, the court declines to grant West's request.[5]

### III. CONCLUSION

For the foregoing reasons, it is ORDERED that:

1. Mando's two motions for cease and desist orders (Docs. # 12 & 15) are DENIED; and

---

[5] The court notes that an approach to employee communications prior to certification is addressed in the non-binding but persuasive decision in *Mevorah v. Wells Fargo Home Mortgage, Inc.*, No. C 05-1175 MHP, 2005 U.S. Dist. LEXIS 28615 (N.D. Cal. Nov. 17, 2005), where the court considered class-action pre-certification case law, and the ethical rules governing corporate counsel's interviews with employees, to find defendant company counsel's information-gathering, including its solicitation of declarations, improper. The court implied that class-action certification law was equally relevant to § 216 certification. *See Mevorah*, 2005 U.S. Dist. LEXIS 28615, at *2 n.1.

2. West's response, to the extent it requests the application of Rule 11 of the

Federal Rules of Civil Procedure (Doc. # 16), is DENIED without prejudice.

Done this 2nd day of October, 2008.

          /s/   W.  Keith Watkins
         UNITED STATES DISTRICT JUDGE